# In the United States Court of Federal Claims

THE LOGISTICS COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

VANQUISH WORLDWIDE, LLC,

Intervenor-Defendant,

No. 22-cv-603

Filed Under Seal: December 5, 2022

Publication: December 14, 2022[1]

*Justin Chiarodo*, Blank Rome LLP, Washington, D.C. and *Jackson W. Moore*, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., Raleigh, North Carolina for Plaintiff. With them on the briefs are *Elizabeth N. Jochum, Stephanie M. Harden*; *Amanda C. DeLaPerriere*, Blank Rome LLP, Washington, D.C.; and *David L. Hayden*; *Amelia L. Errat*, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., Raleigh, North Carolina.

*Michael D. Snyder*, United States Department of Justice, Civil Division, Washington, D.C. for Defendant. With him on the briefs are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division; *Patricia McCarthy*, Director, Commercial Litigation; *Douglas K. Mickle*, Assistant Director, Commercial Litigation; *Christopher T. Delgiorno*, Trial Attorney, Contract Litigation & Intellectual Property Division, U.S. Army Legal Services Agency, Fort Belvoir, VA.

*Todd W. Miller*, Miller & Miller, Golden, Colorado for Intervenor-Defendant.

## MEMORANDUM AND ORDER

In this post-award bid protest, Plaintiff The Logistics Company (TLC) challenges the

United States Department of the Army's (Army's) award of an order for logistics operations

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 12) and was publicly reissued after incorporating all redactions proposed by the parties. (ECF No. 50.) The sealed and public versions of this Memorandum and Order are otherwise substantively identical, except for the publication date and this footnote.

support services at Fort Lee, Virginia (FLVA)/Joint Base Langley-Eustis (JBLE)/Joint Expeditionary Base – Fort Story (collectively, Fort Lee) to Vanquish Worldwide, LLC (Vanquish) under Solicitation No. W52P1J-19-R-0118 (Solicitation or RFP).  *See* Solicitation, Tab 86 at Administrative Record (AR) (ECF No. 23) 13678–13713.  TLC contends the award to Vanquish was erroneous for two reasons: (i) Vanquish allegedly failed to disclose certain legal disputes in compliance with Federal Acquisition Regulation (FAR) 52.209-7(c)(1) and such non-disclosure should have disqualified Vanquish under the Solicitation's "strict compliance" review; and (ii) the contracting officer's responsibility determination concerning Vanquish was arbitrary and capricious due to allegedly inadequate consideration of the substance of those legal matters. Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 38) (Pl. MJAR) at 7–9, 10, 41–42.[2]

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (Rules), TLC, Defendant United States (Government or Defendant), and Intervenor-Defendant Vanquish each moved for Judgment on the Administrative Record.  *See* Pl. MJAR; Defendant's Cross-Motion for Judgment Upon the Administrative Record and Opposition to Plaintiff's Motion (ECF No. 41) (Def. Cross-MJAR); Intervenor's Response to Plaintiff's Motion for Judgment on the Administrative Record, and Intervenor's Cross-Motion for Judgment on the Administrative Record (ECF No. 40) (Intervenor Cross-MJAR).  TLC moves this Court to: (i) declare the award to Vanquish "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the terms of the [Solicitation] or law"; (ii) enter a permanent injunction requiring the Army to conduct another responsibility determination of Vanquish and terminating the award to Vanquish

---

[2] Citations throughout this Memorandum and Order to the Administrative Record correspond to the pagination as provided within that document.  Citations to all other documents, including briefing and exhibits, reference the ECF-assigned page numbers, which do not always correspond to the pagination within the relevant document.

if deemed an unresponsible contractor; and (iii) grant TLC costs, including attorneys' fees.  Pl. MJAR at 41–42.  Defendant and Intervenor-Defendant urge this Court to deny TLC's MJAR and permit the award to Vanquish to proceed.  Def. Cross-MJAR at 5–9, 41; Intervenor Cross-MJAR at 4–5, 20.

After considering the parties' arguments as presented in briefing and during the oral argument held on November 16, 2022, the Court rules in favor of the Defendant and Intervenor-Defendant.   For the reasons discussed below, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**, Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED**, and Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record is **GRANTED**.

## BACKGROUND

### I.        The Parties

Plaintiff TLC is a logistics management company incorporated in North Carolina that provides base operations and logistics services.  Complaint (ECF No. 1) (Compl.) at 11; Tab 20a at AR 3380.  TLC "has performed work at Fort Lee for almost 7 years" as a government contractor and holds a basic ordering agreement (BOA) under the Enhanced Army Global Logistics Enterprise (EAGLE) program.  Compl. at 1, 10; Tab 1a.  Defendant-Intervenor Vanquish is a logistics contractor headquartered in Tennessee and owned by Eric Wayne Barton (Barton). Compl. at 2.  Vanquish also holds a BOA under the EAGLE program.  Tab 1b.

## II.        Vanquish's Prior Legal Matters

Central to TLC's arguments are several legal matters involving Vanquish or its owner, Mr. Barton.

### A.        *United Sadat Transportation and Logistics Co., Ltd. v. Vanquish Worldwide, LLC* (*Sadat*)

In 2014, United Sadat Transportation and Logistics Company, Ltd., (USC) filed suit against Vanquish before the International Chamber of Commerce International Court of Arbitration (ICC).  Tab 96a at AR 14583–84.  USC "asserted claims for: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) fraud; (iv) conversion; and (v) punitive damages."  Tab 96a at AR 14583.  The lawsuit concerned a United States Government contract awarded to Vanquish to provide logistics services for distributing certain materials throughout the combined joint operations area in Afghanistan.  Tab 96a at AR 14558.  This contract required that trucking services be "performed . . . predominantly [meaning 51%] by citizens or permanent resident aliens of Afghanistan."  *Id.* (alteration in original).  To satisfy this requirement, on August 27, 2011, Vanquish subcontracted with USC for trucking services.  *Id.*  In 2014, a dispute arose over whether Vanquish was sufficiently compensating USC per the terms of the subcontract, leading USC to invoke the subcontract's arbitration clause and file suit with the ICC.  *Id.*; Tab 96 at 14583.

The ICC tribunal "bifurcated the arbitration proceedings, with the first stage addressing liability, and the second addressing damages."  Tab 99a at AR 15763.244.  On May 13, 2015, the ICC issued a Partial Award of Liability against Vanquish for conversion and ordered Vanquish to pay USC $6,500,000.  Tab 87a at AR 14135, 14145–46.  It also found "that, on the evidence submitted, [USC] has made out its claim against Vanquish for fraud."  Tab 96a at AR 14623.  On January 19, 2016, the Honorable Scott W. Skavdahl, U.S. District Judge, U.S. District Court for

the District of Wyoming (Wyoming District Court) confirmed all aspects of the ICC's decision except for its award of $6.5 million to USC, which the court vacated after finding the ICC tribunal had exceeded its authority by ruling on damages during the liability phase of the arbitration.  Tab 99a at AR 15763.261–.264.  On the same day, USC — concerned Vanquish was on the brink of bankruptcy — petitioned the ICC to order Vanquish place $6.5 million in escrow as an interim measure, which the ICC so ordered on February 25, 2016.  Tab 99a at AR 15763.266–67.  The Wyoming District Court confirmed the ICC's escrow order on March 7, 2016.  Tab 99a at AR 15763.268.

Shortly thereafter, on April 12, 2016, the parties entered into a settlement agreement consisting of a promissory note between Vanquish and USC for timed payments totaling $5,200,0000, which Barton "absolutely and unconditionally guaranteed."  Tab 87a at AR 14071–73, 14090–92.  These settlement payments were subject to acceleration if a judgment of $2 million or more was entered against Barton.  *Id.*  On May 17, 2016, the Wyoming District Court vacated its January 19, 2016 and March 7, 2016 judgments in the action.  Tab 33a at AR 5536.  Years later, USC filed suit to accelerate Barton's settlement payments after a judgment for over $2 million in alimony was entered against Barton as part of divorce proceedings in 2018.  The parties again settled the matter.  Tab 87 at AR 14071–73; Tab 100 at AR 15768–69.

## B.    *Shafiqullah Koshani v. Eric Wayne Barton, et al.* (*Koshani*)

In 2017, Shafiqullah Koshani of Afghanistan filed a suit in the U.S. District Court for the Eastern District of Tennessee against Barton and Vanquish, "bringing multiple claims, including breach of contract, breach of fiduciary duty, conversion, unjust enrichment, equitable accounting, breach of duty of care, breach of duty of loyalty, breach of duty of trust, usurpation of corporate opportunities, breach of the covenant of good faith and fair dealing, an accounting, and a request

for punitive damages." *Koshani v. Barton*, No. 17-cv-265, 2020 WL 535960, at *1 (E.D. Tenn. Feb. 3, 2020).

According to his amended complaint, Koshani had established a joint venture with Barton in 2010 in Afghanistan, "Vanquish Worldwide" (Vanquish Afghanistan), which "entitled [Koshani] to receive fifty-one percent of any net profits" pursuant to a Joint Venture Agreement (JVA). *Id.* Vanquish Afghanistan immediately pursued a contract with the United States Army, as it "was soliciting bids for a project known as 'National Afghan Trucking,' or 'NAT,' in Afghanistan." *Id.*

Koshani alleged that despite Vanquish Afghanistan's pursuit of the NAT contract, Barton had submitted a proposal for the NAT solicitation on behalf of Vanquish, with Vanquish Afghanistan "tabbed . . . as a subcontractor that would render services under the contract." *Id.* Koshani further alleged that he and Barton then entered into a Profit Sharing Agreement (PSA) that entitled Koshani to "half of 'Vanquish [W]orldwide's' net profits from the NAT contract," while also expressing the parties' intention to proceed "as per our agreement." *Id.* In August 2012, Vanquish stopped providing payment of profits to Koshani, leading him to file suit in federal court. *Id.*

Koshani's suit resulted in a seven day jury trial, at the start of which the Court agreed to Koshani's request to drop Vanquish as a defendant. *Id.* at *2. At the end of the trial, the jury found:

> that Plaintiff had proven by a preponderance of the evidence that [Barton] breached the PSA by failing to share profits with [Koshani]. . . . The jury then found that the amount of compensatory damages that proximately resulted from [Barton's] breach of the PSA was $33,428,859.00. . . . Accordingly, the Court entered final judgment in [Koshani's] favor, awarding damages in the amount of $33,429,859. . . .

*Id.* at *3. Accordingly, on June 7, 2019, the Honorable Thomas W. Phillips, U.S. District Judge, U.S. District Court for the Eastern District of Tennessee (Tennessee District Court), entered

judgment for Koshani against Barton in the amount of $33,428,859.00.  Judgment, *Koshani v. Barton*, No. 17-cv-265, Tab 87a at AR 13965.

It is undisputed, however, that Barton did not make payments in accordance with that judgment, leading Koshani to file "more than 35 writs of garnishment against Barton's assets," which Barton attempted to quash.  Tab 99a at AR 15763.135–.214; Tab 99 at AR 15746; Pl. MJAR at 36–37; Def. Cross-MJAR at 29–30; Oral Argument Transcript, November 16, 2022 (ECF No. 47) (Oral Arg. Tr.) at 23:16–24:6.  The Tennessee District Court denied Barton's motions on August 14, 2019.  Tab 99a at AR 15763.176–.214.  Before Barton made any payment to Koshani, the parties entered into a settlement agreement.  Consistent with that settlement, in October 2020, the Tennessee District Court vacated its 2019 judgment against Barton and dismissed the action with prejudice.  Tab 98 at AR 15736; Tab 100 at AR 15769.  It is undisputed that the Court entered its vacatur and dismissal before Barton had paid any portion of the judgment to Koshani.  *See* Oral Arg. Tr. at 23:16–24:6; Pl. MJAR at 36.

## C.   *Eric Wayne Barton v. Mechelle Schlomer Barton* (*Barton*)

The third lawsuit at issue in this action is a divorce proceeding between Barton and his former wife.  On July 6, 2018, the Chancery Court for Blount County, Tennessee, entered a Final Judgment for Divorce requiring Barton to pay $7,294,570.30 as alimony *in solido* over a 10-year period.  Tab. 99a at AR 15763.111.  That judgment also awarded a lien on real property, including property "titled in the name of Eric Wayne Barton, . . . Vanquish Worldwide, LLC, and/or Vanquish Leasing."  Tab 96a at AR 14535.  On November 10, 2020, the Court of Appeals of Tennessee at Knoxville vacated "those parts of the judgment that awarded a lien on real property belonging to LLCs in which [Barton] had 100 percent ownership interest."  Tab 96a at AR 14533, 14538–40.  Relevant here, the Administrative Record reflects that Barton paid the required

alimony to his ex-wife at least until the appellate court's vacatur of the lien on Vanquish.  *See* Tab

98 at AR 15733 (acknowledging Barton made required payments before the appellate judgment).

### D.    *Vanquish Worldwide, LLC v. United States* (*Vanquish Worldwide*)

Finally, *Vanquish Worldwide, LLC v. United States* is an action currently pending in the

United States Court of Federal Claims and concerns the Army's termination for cause of twelve

Transportation Mission Requests issued to Vanquish throughout 2015 for trucking services in

Afghanistan.  *Vanquish Worldwide, LLC v. United States*, No. 17-cv-96 (Fed. Cl. Jan. 23, 2017)

(Kaplan, C.J.); *see* Tab 96a at AR 14696.  The United States responded to Vanquish's complaint

by raising nine counterclaims, alleging Vanquish "charg[ed] the United States for security services

never provided," lost cargo, overbilled for cancelled missions, and that its employees ate

unauthorized meals at government dining facilities.  Tab 96a at AR 14707–22.  The litigation

remains ongoing.

### III.    The Solicitation and Award

On January 8, 2020, the Army issued Solicitation No. W52P1J-19-R-0118, seeking

logistics support services — such as maintenance, supply, and transportation — for Fort Lee.  Tab

5 at AR 113–84; Tab 43 at AR 6556.  The RFP limited acceptable offerors to those with both a

BOA under the EAGLE program and small business status under North American Industry

Classification System (NAICS) Code 561210.  Tab 43 at AR 6556.

The RFP specified the process by which the Army would determine the awardee, stating,

"The Government will make an award to the responsible Offeror (IAW FAR 9.1) whose proposal

complies with the RFP requirements and is determined to be the lowest total evaluated (fair and

reasonable) priced proposal that is determined to be Technically Acceptable with Substantial

Confidence in Past Performance."  Tab 5 at AR 176.  This language translated to a three-part

evaluation process.  *First,* the Army evaluated proposals for "strict compliance" with the terms of

the RFP and for technical acceptability.  Tab 5 at AR 177–78.  *Second*, of the technically acceptable proposals, the three lowest-priced proposals were evaluated for past performance of each offeror and the reasonableness of their respective pricing.  *Id.*  In evaluating an offeror's past performance, the contracting officer was to consider an offeror's "demonstrated record of recent and relevant performance," with "recency" defined as having occurred within three years of the RFP closing date.  Tab 5 at AR 180–81.  *Third*, the Army would identify the lowest evaluated fair and reasonably-priced proposal of the technically acceptable proposals submitted, determine whether its offeror was "responsible" and had a past performance rating of "Substantial Confidence," and, if so, award that offeror the contract.  Tab 5 at AR 177–81.

In addressing the responsibility determination made during step three, the RFP stated that "[a]n otherwise successful Offeror may not be eligible for award if it cannot be determined responsible for any of the reasons in FAR 9.104."  Tab 5 at 118.  FAR 9.104-7 requires offerors to comply with the disclosure requirements of FAR 52.209-7.  FAR 9.104-7(b) ("The contracting officer shall insert the provision at 52.209-7, Information Regarding Responsibility Matters, in solicitations where the resultant contract value is expected to exceed $600,000."); *see* Tab 5 at AR 153–54.  FAR 52.209-7, incorporated fully into the RFP at paragraph K-7, requires offerors with over $10,000 in active federal contracts to certify they have fully disclosed to the Federal Awardee Performance and Integrity Information System (FAPIIS) information about certain past activity, including in relevant part:

> (c)(1) Whether the offeror, and/or any of its principals, has or has not within the last five years, in connection with the award to or performance by the offeror of a Federal contract or grant, been the subject of a proceeding, at the Federal or State level that resulted in any of the following dispositions:
> . . . .
> (ii) In a civil proceeding, a finding of fault and liability that results in the payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more.
> . . . .

(iv) In a criminal, civil, or administrative proceeding, a disposition of the matter by consent or compromise with an acknowledgment of fault by the Contractor if the proceeding could have led to any of the outcomes specified in paragraphs (c)(1)(i), (c)(1)(ii), or (c)(1)(iii) of this provision.

FAR 52.209-7(c)(1); *see* Tab 5 AR 153–54.

On July 30, 2020, TLC and Vanquish each timely submitted proposals in response to the RFP.  Tabs 20, 22.  Each offeror held a BOA under the EAGLE program and possessed the small business status required by the RFP.  Tabs 20, 22, 43 at AR 6559.  At the time of Vanquish's bid submission, its FAPIIS disclosures made no mention of the *Sadat*, *Koshani*, *Barton*, or *Vanquish Worldwide* legal matters.  *See* Tab 98 at AR 15575–76.

During step one of the evaluation, the Army found both Vanquish's and TLC's proposals to be "Technically Acceptable."  Tab 23b at AR 5201; Tab 23c at 5211.  During step two, both offerors were given a Past Performance rating of "Substantial Confidence," and both proposals were determined to be fair, reasonable, and their costs realistic.  Tab 24 at AR 5252, 5263; Tab 25b at 5295–96; Tab 25c at AR 5311–12.  Vanquish's proposal was determined to have the lowest total evaluated price, $65,083,198.00, compared to the $66,971,975 cost of TLC's proposal.  *Id.* Accordingly, on November 23, 2020, the Army notified the unsuccessful offerors of its intent to make the award to Vanquish, and notified Vanquish itself of the award the following day.  Tabs 26, 27 at AR 5313–30.  None of these notifications expressly mentioned the responsibility determination of Vanquish, because, as Defendant contends, a written explanation or confirmation of a responsibility determination was not required under the FAR.  *See* FAR 9.105-2(a)(1) ("The contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract.").

## IV.        **Initial Post-Award Protests**

On November 27, 2020, TLC submitted an agency-level size protest, alleging Vanquish did not qualify as a "small business" under the NAICS and was thus ineligible for the award.  Tab 28 at AR 5331–36.  Following reconsideration, the Small Business Administration — which determines whether an entity qualifies as a small business for the purposes of NAICS — re-certified Vanquish as a small business in December 2020.  Tab 30 at AR 5504–17.

On December 4, 2020, another offeror under the RFP submitted an agency level protest, which alleged, *inter alia*, that Vanquish and Barton "had multiple settlements and an outstanding judgment in the amount of $33,428,859.00," and "that Vanquish submitted false certifications by failing to report these settlements or judgments."  Tab 43 at AR 6563.

The Army took corrective action in response to the December 4, 2020 protest and re-evaluated its previous responsibility determination concerning Vanquish, considering the new information.  *Id.*  During the Army's re-evaluation, Vanquish provided the Army with information about the appellate court's vacatur in *Barton*, and the settlement, vacatur, and dismissal with prejudice in *Koshani*.  Tab 98 at AR 15733.  On February 19, 2021, the contracting officer also requested Vanquish reaffirm its "Representations and Certifications regarding responsibility matters," including, specifically, whether Vanquish had fully complied with FAR 52.209-7(c)(1)'s disclosure requirements.  Tab 32 at AR 5529–30.  Vanquish reaffirmed its compliance.  *See* Tab 43 at AR 6564.

The Army then established a competitive range and opened discussions with the three offerors previously rated technically acceptable — and that had accordingly successfully advanced past step one of the evaluation process — permitting those offerors to submit proposal revisions by July 16, 2021.  Tab 71a at AR 12581–83.  All three offerors timely submitted proposal revisions. *See* Tabs 64–66, 72–74.  The technical and past performance ratings of the proposals and their

11

offerors, respectively, remained unchanged following the submission of revised proposals. *See* Tab 83 at AR 13660. Vanquish's proposal remained the lowest priced of the three at $66,045,755, as compared to TLC's at $████████, and the third offeror's at $████████. *Id.* On October 13, 2021, the contracting officer determined Vanquish to be "responsible" based on such factors as: Vanquish's attestation that its disclosures to the FAPIIS system were correct, having "adequate resources to perform the contract," having the necessary organization and skills to carry out the contract, having "a satisfactory performance record," and having a "satisfactory record of integrity and business ethics." Tab 84 at AR 13662–67. Accordingly, the Army reaffirmed its award to Vanquish on October 14, 2021. Tab 98 at AR 15047–70.

## V.    TLC's First GAO Protest

On November 1, 2021, TLC filed a protest before the United States Government Accountability Office (GAO) centered on three allegations: (1) Vanquish had not properly disclosed certain pending judgments against it at the time it submitted its proposal; (2) Vanquish failed to disclose past performance issues arising from government contracts concerning trucking services in Afghanistan; and (3) the Army did not adequately consider Vanquish's business integrity and ethics in making its responsibility determination. TLC Protest, dated November 1, 2021, Tab 87a at AR 13717–36. The Army again took corrective action to investigate, stating it would:

a)  Investigate the allegations and information provided in the protest related to Vanquish's responsibility;

b)  Determine their impact on the award decision; and

c)  Make a new responsibility determination and award decision.

Memorandum re: Corrective Action for TLC's GAO Protest, Tab 90 at AR 14184; *see* Source Selection Decision Document, dated February 8, 2022, Tab 95 at AR 14215. In response to the

Army's decision to take corrective action, the GAO dismissed the protest on November 29, 2021, as "academic."  Tab 89 at AR 14183.

The Army completed its corrective action on February 8, 2022, and once again reaffirmed its award to Vanquish.  Tab 95 at AR 14215–17.  As part of the corrective action, the contracting officer requested affidavits from Vanquish's principals and from Barton averring that (i) no payments had been made in connection with the award to or performance of a federal contract, and (ii) Vanquish's Representations and Certifications in its offer did not contain omissions or false representations.  Tab 92 at AR 14189.  In addition, the contracting officer asked that Barton's affidavit specifically attest that any settlement payments related to the *Sadat* and *Koshani* matters were not made at the direction of a final judgment.  Tab 92 at AR 14190–91.  These affidavits included the following declaration: "The information contained in this Affidavit is true and correct to the best of my knowledge and belief."  AR Tab 91 at AR 14185.  Separately, in response to TLC's argument that Vanquish had failed to properly disclose past performance issues, the contracting officer examined the timing and confirmed that any issues with Vanquish's performance of trucking services in Afghanistan were not recent or relevant, as they occurred outside of the RFP's three-year window for considering adverse past performance.  Tab 95 at AR 14216; *see* Tab 5 at AR 181.

## VI.     TLC's Second GAO Protest

On February 22, 2022, TLC filed a second protest with GAO, advancing several arguments, including that (i) "Vanquish should have been excluded from consideration based on its past performance and Vanquish's failure to disclose" the *Sadat*, *Koshani*, and *Barton* matters, and (ii) the Government failed "to follow acquisition requirements when evaluating Vanquish's responsibility."  Tab 96 at AR 14221, 14228–46.  The GAO rejected TLC's contention that the contracting officer "unreasonably failed to consider the information raised by the protestor" and

found no basis to conclude there were issues with Vanquish's representations.  Tab 100 at AR 15764–73.  The GAO ultimately denied the protest on May 26, 2022.  Tab 100 at AR 15773.  Subsequently, TLC filed this bid protest on June 1, 2022.  *See* Compl.

## APPLICABLE LEGAL STANDARD

The Tucker Act, 28 U.S.C. § 1491(b)(1), provides the United States Court of Federal Claims with broad jurisdiction to hear post-award bid protests.  The Court reviews post-award bid protests in two steps.  First, the Court analyzes the procurement under the Administrative Procedure Act (APA).  28 U.S.C. § 1491(b)(4); *see Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021).  Second, the Court must analyze whether the alleged errors prejudiced the protestor.  *See DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1308 (Fed. Cir. 2021).

Under the first step, the Court reviews "whether the agency's actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'"  *Off. Design Grp. v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020) (quoting *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013)); 5 U.S.C. § 706.  While the inquiry under the APA "is to be searching and careful, the ultimate standard of review is a narrow one.  The court is not empowered to substitute its judgment for that of the agency."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416–20 (1971).  Accordingly, courts may set aside an award only if "(1) 'the procurement official's decision lacked a rational basis' or (2) 'the procurement procedure involved a violation of regulation or procedure.'"  *DynCorp*, 10 F.4th at 1308 (quoting *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020)).

When a protestor alleges the agency's decision lacked a rational basis, the court reviews "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (internal

quotations omitted) (quoting *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).  As the United States Court of Appeals for the Federal Circuit (Federal Circuit) has explained, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis."  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (internal quotations omitted) (quoting *Impresa Construzioni Geom. Domenic Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Indeed, agency decisions are "entitled to a presumption of regularity."  *Impresa*, 238 F.3d at 1338.  Protestors bear a similar burden when alleging that the procurement involved legal or procedural violations, as the court reviews such claims for "a clear . . . violation of applicable statutes or regulations."  *Id.* at 1333 (internal quotations omitted) (quoting *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166,1169 (D.C. Cir. 1973)).

At the second step, the protestor must establish that the agency's conduct prejudiced the protestor.  *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021).  This is a factual question for which the protestor must "show 'that there was a "substantial chance" it would have received the contract award but for' the [alleged error]."  *Id.* at 998 (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005)).

The Court's Rules provide the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court."  *Bannum*, 404 F.3d at 1356.  Parties initiate such a proceeding by filing a motion for judgment on the administrative record.  Rule 52.1(c).  In adjudicating cross-motions under Rule 52.1, a court resolves questions of fact by relying on the administrative record.  *See id.*  If necessary, a court may remand the case to a governmental agency for further factual findings.  Rule 52.2.

## **DISCUSSION**

It is undisputed that at the time of the procurement, the disclosure requirements outlined in FAR 59.209-7(c)(1) could have applied to Vanquish if, in fact, Vanquish or its principals were the subject of a legal proceeding that met the disclosure criteria in that regulation.  Pl. MJAR at 31 (contending the FAR 52.209-7(c) disclosure requirements apply to Vanquish as an offeror with current active federal contracts and grants with a total value greater than $10 million); Def. Cross-MJAR at 21 (acknowledging the FAR's $10 million federal contract minimum, which triggers disclosure requirements); *see* FAR 52.209-7(c)(1)(i)-(iv).  The dispute, therefore, lies in whether the *Sadat, Koshani*, *Barton*, and *Vanquish Worldwide* matters qualify as legal proceedings that triggered their disclosure to the Army under FAR 52.209-7(c)(1) during the procurement process.  As noted, FAR 52.209-7(c)(1) limits such disclosure to proceedings that occurred "within the last five years, in connection with the award to or performance by the offeror of a Federal contract or grant . . . ."  FAR 52.209-7(c)(1).  TLC advances two arguments in favor of its request for relief.  *First*, it argues that both FAR 52.209-7 and the terms of the RFP required Vanquish to disclose the *Sadat, Koshani*, *Barton*, and *Vanquish Worldwide* legal matters to the Army via FAPIIS, and that Vanquish's failure to do so constituted a material misrepresentation that should have disqualified it from receiving the award.  Pl. MJAR at 20, 26–27.  Specifically, TLC argues that Vanquish violated 52.209-7(c)(1) by failing to disclose the *Sadat, Koshani*, *Barton*, and *Vanquish Worldwide* matters because they arose within the mandated five-year disclosure period and occurred "in connection with" certain of Vanquish's contracts with the Government.  *Id.* at 7, 31–32.  *Second,* TLC argues the contracting officer failed to adequately consider the substance of Vanquish's previous and ongoing legal matters, resulting in an arbitrary and capricious responsibility determination that lacked a rational basis.  In contrast, the Government contends that Vanquish was not required to disclose any of the four identified prior legal matters, and that

16

the contracting officer's responsibility determination of Vanquish had a rational basis such that it was not arbitrary and capricious.  Def. Cross-MJAR at 20–39.

This Court finds TLC's arguments unpersuasive.  Based on a review of the Administrative Record, and the plain language of FAR 52.209-7, expressly incorporated in the RFP, Vanquish was not required to disclose the *Sadat*, *Koshani*, *Barton*, or *Vanquish Worldwide* matters during this procurement process.  Furthermore, the contracting officer's responsibility determination of Vanquish finds sufficient support in the Administrative Record, especially considering the significant discretion afforded to contracting officers making responsibility determinations.

## I.     FAR 52.209-7 Does Not Require Vanquish Disclose the *Sadat*, *Koshani*, *Barton*, and *Vanquish Worldwide* Matters

When statutory or regulatory language is clear, this Court is bound to give effect to its plain meaning.  *See Caminetti v. United* States, 242 U.S. 470, 490 (1917); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 ("If the statute is clear and unambiguous 'that is the end of the matter . . . .'") (quoting *Bd. of Governors, FRS v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986)); *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning.").  TLC contends that Vanquish was required to disclose the *Sadat*, *Koshani*, *Barton*, and *Vanquish Worldwide* legal matters in its submissions, under both FAR 52.209-7(c)(1) and the express terms of the RFP.  Pl. MJAR at 31–38, 41.  TLC further contends that Vanquish's failure to do so disqualifies Vanquish from an award here.  *Id.* at 38.  TLC's argument raises two interpretive questions.  *First*, a threshold question of whether each of the legal matters occurred "in connection with the award to or performance by the offeror of a Federal contract or grant" within the last five years such that it falls within the scope of FAR 52.209-7(c)(1)'s disclosure obligation.  *Second*, whether a judgment entered in each action "results in the payment of a monetary fine, penalty, reimbursement, restitution, or damages of

$5,000 or more," such that it must be disclosed under FAR 52.209-7(c)(1)(ii).  Each question is addressed separately.

A.   **FAR 52.209-7(c)(1) Covers Legal Matters Occurring "In Connection With" Certain Disputes Related to a Government Contract**

As noted, FAR 52.209-7(c) mandates disclosure of proceedings that occurred "within the last five years, in connection with the award to or performance by the offeror of a Federal contract or grant."  *Id.*  TLC contends that Vanquish violated FAR 52.209-7(c)(1) by failing to appropriately disclose in FAPIIS certain past legal matters during the procurement process.  Pl. MJAR at 31–32. For TLC to succeed on this argument, it must demonstrate that each referenced proceeding involved a finding of fault or liability that (i) occurred within the past five years, and (ii) that occurred "in connection with the performance or award" of a government contract.  FAR 52.209-7(c)(1).

In its Cross-Motion for Judgment Upon the Administrative Record, the Government contends that Vanquish was not required to disclose the *Sadat*, *Koshani*, and *Barton* matters as part of this procurement because such matters did not occur "in connection with" the performance of a federal contract.  Def. Cross-MJAR at 7, 25.  Specifically, the Government contends that such disputes purportedly did not arise "directly" from a federal contract, but instead stemmed from contracts Vanquish entered into with third parties.  *Id.* at 25.  In its Reply, the Government acknowledged its Cross-Motion "did not advance a particularly conclusive argument in this context."  *See* Defendant's Reply in Support of Its Cross-Motion for Judgment Upon the Administrative Record (ECF No. 44) (Def. Reply) at 5.  Nevertheless, as the Government did not withdraw the argument, the Court addresses it here.

Second, the Government also contends that Vanquish was not required to disclose the *Sadat* matter under FAR 52.209-7(c)(1) because the relevant findings of fact and liability occurred

outside the regulation's five year disclosure period.  Def. Cross-MJAR at 29.  Finally, this Court considers whether the *Vanquish Worldwide* case was required to be disclosed pursuant to FAR 52.209-7(c)(1).

As discussed below, Vanquish did not make a material misrepresentation by failing to disclose the *Koshani*, *Sadat*, *Barton*, and *Vanquish Worldwide* matters in the FAPIIS system, as such matters occurred outside the scope of  FAR 52.209-7(c)(1)'s disclosure requirements.

### i. *Koshani*

The Government contends that Vanquish was not required to disclose the *Koshani* matter during the procurement process because the matter purportedly did not occur "in connection with" the performance of a federal contract.  Def. Cross-MJAR at 7, 25.  This Court disagrees with the Government's position.

As discussed above, the *Koshani* matter concerned a dispute over a profit sharing agreement between Barton and Shafiqullah Koshani, which entitled Koshani to half of the net profits from a government contract between Vanquish Worldwide and the United States, under which Koshani's company performed certain services.  *Koshani v. Barton*, No. 3:17-CV-265, 2020 WL 535960, at *1 (E.D. Tenn. Feb. 3, 2020); *see also supra* Background Section II.B.

The term "connection" is defined as a "causal or logical relation or sequence," "contextual relation or association," or as a "relationship in fact."  *Connection*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).  In contrast, the term "direct" is defined as "[f]ree from extraneous influence; immediate," indicating that "in connection with" should be considered as covering a broader range of proceedings than just those with disputes arising immediately or directly from a contract with the government.  *Direct*, *Black's Law Dictionary* (10th ed. 2014).  Other federal courts have interpreted the phrase "in connection with" similarly when used in other federal statutes and regulations.  *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S.

71, 78 (2006) (in context of federal regulation prohibiting fraud, noting phrase "in connection with" is consistently interpreted broadly); *Maracich v. Spears*, 570 U.S. 48, 59–60 (2013) (in context of a motor vehicle disclosure regulation, "the phrase 'in connection with' is essentially 'indeterminate' because connections, like relations "'stop nowhere'") (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)) (cleaned up). Therefore, consistent with the definition of the phrase, FAR 52.209-7(c)(1) is best read as extending its coverage to disputes arising not only directly from the contract between the government and contractor, but also to matters with a causal relation to the performance of such a contract.[3]  *See Connection*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).  The *Koshani* matter undeniably occurred "in connection with" the performance of a federal contract, as its central dispute concerned profits allegedly owed to Koshani for actual work performed pursuant to Vanquish's contract with the United States for services in Afghanistan.  Accordingly, contrary to the Government's position, the *Koshani* matter clearly occurred within the scope of FAR 52.209-7(c)(1).

     **ii.**   *Sadat*

The Government argues that Vanquish was not required to disclose the *Sadat* matter during the procurement process because it (i) allegedly did not occur "in connection with" a government contract, and (ii) did not occur within the five year disclosure deadline established by FAR 52.209-7(c)(1).  This Court disagrees with the Government on its first point, but agrees with its second

---

[3] Although the phrase "in connection with" encompasses a broader scope of matters than those that are simply "directly" related, that scope is not unbounded.  This Court need not, however, determine the precise bounds of the phrase "in connection with" to resolve this issue.  Disputes over payment for services performed pursuant to a federal government contract are plainly performed "in connection with the award to or performance by the offeror of a Federal contract or grant . . . ."  FAR 52.209-7(c)(1).

point that disclosure was not mandated by FAR 52.209-7(c)(1) because the relevant liability determination in that matter occurred outside the regulation's five-year disclosure period.

In *Sadat*, Vanquish was awarded a United States Government contract to provide logistics services throughout the combined joint operations area in Afghanistan.  Tab 96a at AR 14558. This contract required that trucking services be "performed . . . predominantly [meaning 51%] by citizens or permanent resident aliens of Afghanistan."  *Id.* (emphasis in original).  For this reason, Vanquish entered into a subcontract with USC, out of which arose the dispute at the center of the *Sadat* matter.  *Id.*  As noted, the ICC's relevant "finding of fault and liability" occurred on May 13, 2015, in the form of a partial arbitration award to USC.  Tab 96 at 14622–30; *see supra* at Background Section II.B.  Subsequently, on January 19, 2016, the Wyoming District Court affirmed this award, except for a requirement that Vanquish pay USC a sum of damages.  Tab 99 at AR 15763.252–.264.

As noted, the phrase "in connection with" does not require a direct connection between the government contract and the central dispute of a legal matter.  *See supra* at Discussion Section I.A. The subcontract between Vanquish and USC at the heart of the *Sadat* dispute would not have existed but for Vanquish's contract with the federal government for logistics services throughout Afghanistan.  As such, the *Sadat* matter occurred "in connection with" the performance of a government contract.

However, the Government also argues the *Sadat* matter need not have been disclosed because it fell outside the five year disclosure period in FAR 52.209-7(c)(1).  Def. Cross-MJAR at 29.  This Court agrees.  While the Wyoming District Court's January 19, 2016 affirmance of the ICC's findings occurred within five years of Vanquish's July 30, 2020 RFP submission, the Wyoming District Court's review was focused on procedural issues and involved no new findings of fault or liability.  Tab 99a at AR 15763.241–64.  Instead, the ICC's May 13, 2015 ruling on

partial liability is the relevant decision at issue here for purposes of determining whether the *Sadat* matter falls within FAR 52.209-7(c)(1)'s five year disclosure period.  *See* ICC Tribunal Award, Tab 87a AR 14093–14146; *see also supra* at Background Section II.A.  Indeed, TLC's focus on the text of original ICC decision further supports that the ICC's May 13, 2015 decision on fault and liability is the ruling truly at issue here.  *See* Pl. MJAR at 13–16.  Accordingly, the *Sadat* matter does not fall within the scope of FAR 52.209-7(c)(1), as the ICC's May 13, 2015 findings of fault and liability occurred over five years before Vanquish submitted its RFP proposal on July 30, 2020.  For this reason, this Court must deny TLC's claim that Vanquish made a material misrepresentation by failing to disclose the *Sadat* matter in the FAPIIS system.

### iii. *Barton*

TLC argues divorce proceedings between Barton and his former wife occurred "in connection with" the performance or award of federal government contracts due to a lien placed on property titled in Vanquish's name to secure payment of an award for alimony.  Pl. MJAR at 16–17.  This lien was ultimately vacated by the Court of Appeals of Tennessee at Knoxville, although it appears that Barton made the required alimony payments preceding the lien's vacatur. Tab 96 at AR 14533, 14540.

While TLC's counsel declined to withdraw this argument during this Court's November 16, 2022 Oral Argument, he acknowledged the obvious point that any statements of fault in the *Barton* divorce matter "were not government-contracts-related; they were personal in nature." Oral Arg. Tr. at 33:12–20.  While the *Koshani* suit would not have been brought but for a specifically identified government contract, the same cannot be said of the *Barton* matter.  The Court therefore agrees with TLC's counsel's characterization of the divorce proceedings as being "personal in nature," and finds the *Barton* matter to be unrelated – and certainly unconnected – to a government contract and outside the scope of FAR 52.209-7(c)(1).  Accordingly, Vanquish was

not required to disclose the *Barton* matter because it was not a matter that occurred "in connection" with a government contract.  FAR 52.209-7(c)(1).  Accordingly, Vanquish did not materially misrepresent its responsibility by failing to disclose the *Barton* matter in accordance with FAR 52.209-7(c)(1).

### iv.   *Vanquish Worldwide*

TLC also alleges that Vanquish failed to disclose in FAPIIS *Vanquish v. United States*, No. 17-cv-96c (Fed. Cl. Jan. 23, 2017) (Kaplan, C.J.), in contravention of FAR 52.209-7(c)(1).  Pl. MJAR at 41.  FAR 52.209-7(c)(1) mandates an offeror disclose certain proceedings from the previous five years in which the offeror or any of its principals were the subject, including: criminal proceedings resulting in a conviction; certain civil and administrative proceedings with a finding of fault and liability that results in payment of funds; and proceedings with "a disposition of the matter by consent or compromise with an acknowledgement of fault by the Contractor."  FAR 52.209-7(c)(1).  There is no reference in either the Administrative Record or the parties' briefing to the occurrence of a criminal proceeding, nor to a civil or administrative proceeding in the *Vanquish* case resulting in an acknowledgement or finding of fault and liability, much less any payment of funds due.  Accordingly, TLC's claim that Vanquish materially misrepresented its responsibility submission by failing to disclose the *Vanquish* matter under FAR 52.209-7(c)(1) is without merit.

### B.   FAR 52.209-7(c)(1)(ii) Covers Payments Made Pursuant to a Judgment, Not Pursuant to a Settlement Agreement

TLC also argues that Vanquish was required to disclose the *Koshani* and *Sadat* matters[4] in FAPIIS under FAR 52.209-7(c)(1)(ii), which requires disclosure where there is, "[i]n a civil

---

[4] Although the Court held in Discussion Section I.A that the *Sadat* matter need not have been disclosed during the procurement process pursuant to FAR 52.209-7(c)(1), as the relevant

proceeding, a finding of fault and liability that results in the payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more." FAR 52.209-7(c)(1)(ii); Pl. MJAR at 31–38. The Government and Vanquish object, stating that neither of the referenced legal matters were required to be disclosed under FAR 52.209-7(c)(1)(ii). Def. Cross-MJAR at 20–31; Intervenor Cross-MJAR at 17–20.

The parties contest the scope of the phrase "results in the payment of" in FAR 52.209-7(c)(1)(ii). Plaintiff's Reply in Support of Its Motion for Judgment on the Administrative Record and Motion for Permanent Injunctive Relief and Response to Defendant's and Intervenor's Cross-Motions for Judgment on the Administrative Record (ECF No. 42) (Pl. Reply) at 4 ("That these judgments 'result[ed]' in restitution or damages payments under FAR 52.209-7(c)(1) is obvious."). TLC urges a broad reading of the phrase "results in" that would interpret payments made pursuant to post-judgment settlement agreements as having "result[ed]" from the preceding judgment. Pl. MJAR at 35–37. Putting aside that the settlement agreements admitted no fault, TLC's broad interpretation, if adopted, would have required Vanquish to disclose in FAPIIS the *Sadat* and *Koshani* matters, as Vanquish made payments pursuant to settlement agreements in those matters. *See* Pl. MJAR at 37; Def. Cross-MJAR at 21–22; *see also* Oral Arg. Tr. at 31:24–32:7 (TLC: characterizing the *Sadat* and *Koshani* settlement agreements as "say[ing] no one is going to be making any admissions of liability one way or the other"), 39:24–40:1 (Government: "[I]f the settlement had included language that admitted fault, perhaps we'd be in a different case, but there's no evidence of any of that."), 55:11–12 (Vanquish: "Were there acknowledgements of fault? And the answer is no."). The Court declines to adopt such a broad reading, as to do so would be in contravention of the clear and plain meaning of the FAR's text.

---

findings of fault and liability occurred outside of the regulation's five-year window, the Court nevertheless addresses TLC's secondary argument here for completeness.

The term "result" is defined as a "consequence, effect, or conclusion." *Result*, *Black's Law Dictionary* (10th ed. 2014). This Court must examine the phrase in the context of FAR 52.209-7(c)(1) in its entirety. *See Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350, 1356 (Fed. Cir. 2015) ("We do not construe statutes in a vacuum, and 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (quoting *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 809 (1989)).

When examining a word or phrase in context, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). While FAR 52.209-7(c)(1) paragraphs (i)–(iii) address proceedings resulting in either a criminal conviction or an administrative or civil finding of fault and liability resulting in a payment of funds, paragraph (iv) covers proceedings with "a disposition of the matter by consent or compromise with an acknowledgement of fault by the contractor if the proceeding could have led to the outcomes specified" in those three preceding paragraphs. FAR 52.209-7(c)(1)(iv). That paragraph (c)(1)(iv) is the only subsection of FAR 52.209-7(c)(1) that specifically addresses proceedings ending in "a disposition of the matter by consent or compromise" — such as a settlement agreement — strongly suggests settlement proceedings or agreements are not covered by paragraphs (i)–(iii).

This interpretation is bolstered by paragraph (c)(1)(iv)'s use of the phrase "*could have led to any of the outcomes specified in paragraph*[] . . . (c)(1)(ii)," which indicates that a matter may not qualify under both paragraphs (c)(1)(ii) and (c)(1)(iv). FAR 52.209-7(c)(1)(iv) (emphasis added). Under TLC's proposed interpretation of FAR 52.209-7(c)(1), a proceeding could fall under the scope of both paragraphs. This Court disagrees. As an example: if a party is found at fault and liable during a civil proceeding, enters into a settlement agreement containing an acknowledgement of fault, and then makes a payment pursuant to that agreement, both paragraphs

(c)(1)(ii) and (c)(1)(iv) could, on first glance, seemingly apply.  However, such an outcome would violate the clear meaning of (c)(1)(iv) because the phrase "could have led" makes its scope and the scope of paragraph (c)(1)(ii) mutually exclusive.  This Court is mindful of the interpretive principle to read provisions "in a way that renders them compatible, not contradictory," and accordingly declines to adopt TLC's reading of FAR 52.209-7(c)(1).  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012).

While the scope of the term "results" may still be read broadly in the context of FAR 52.209-7(c)(1), that reading cannot be boundless when considering the regulation as a whole.  The overall context of FAR 52.209-7(c)(1) demonstrates that payments made pursuant to a settlement agreement cannot be considered to have "result[ed]" from a prior finding of fault and liability. Such a reading would ignore the clear language and structure of FAR 52.209-7(c)(1).

### i.  Sadat

As noted, the relevant finding of fault and liability in the *Sadat* case occurred outside the five-year disclosure period contemplated by FAR 52.209-7(c)(1), and accordingly cannot serve as the basis of a disclosure obligation under that provision.  *See supra* Discussion Section I.A.ii. However, even assuming, *arguendo*, the allegations concerning the *Sadat* matter fell within the five-year disclosure period, Vanquish would still not be obligated to disclose the matter via FAPIIS.

As TLC acknowledged during oral argument, the only payments made in the *Sadat* matter were "settlement payments," made pursuant to a settlement agreement between the parties in that case.  Oral Arg. Tr. at 23:4–15.  Such payments are not considered to have "result[ed]" from a finding of liability and fault in a civil proceeding and are thus not required to be disclosed under FAR 52.209-7(c)(1).  While paragraph (c)(1)(iv) requires disclosure of certain proceedings that end in a settlement agreement, it does so only when the agreement contains an acknowledgement

of fault by the contractor.  FAR 52.209-7(c)(1)(iv).  The parties in the present case do not argue

there was such an acknowledgment in the *Sadat* settlement agreement.[5]  *See* Oral Arg. Tr. at 31:24–

32:7, 39:24–40:1, 55:11–12.  As a result, Vanquish was not obligated to disclose the *Sadat* matter

under FAR 52.209-7(c)(1) on this ground either.

> ### ii.    *Koshani*

It is uncontested that at the time Vanquish submitted its proposal on July 30, 2020, no

payments had been made in the *Koshani* matter pursuant to a civil proceeding in which there was

a finding of liability and fault.  *See* Oral Arg. Tr. at 23–24.  In fact, it was precisely Barton's failure

to make payments under a judgment in the case that resulted in Koshani filing multiple writs of

garnishment against Barton.  *See* Tab 99a at AR 15763.135–.214.  Barton and Koshani eventually

reached a settlement agreement and requested that the prior judgment be vacated and dismissed

with prejudice, all of which occurred in October 2020.  Tab 97 at AR 15736; Tab 100 at AR 15769.

As TLC acknowledged at oral argument, any and all payments made in the *Koshani* matter

occurred pursuant to this settlement agreement.  Oral Arg. Tr. at 23:24–24:2.  And, as previously

addressed, such payments fall outside the plain and clear meaning of FAR 52.209-7(c)(1)(ii).  For

the reasons stated above, TLC's claim that Vanquish materially misrepresented its responsibility

by failing to disclose the *Koshani* matter under FAR 52.209-7(c)(1) lacks merit.  TLC's claim is

accordingly denied on this ground as well.

## II.    **The Contracting Officer's Responsibility Determination of Vanquish Was Not Arbitrary, Capricious, or an Abuse of Discretion**

TLC argues the Army's determination that Vanquish was a "responsible" contractor lacked

a rational basis due to the contracting officer's failure to "consider[] the findings of fraud, tortious

---

[5] The parties did not include copies of the settlement agreements in the Administrative Record. *See* Oral Arg. Tr. at 14:15–20.

interference, and other wrongdoing in *Koshani* and *Sadat*, the *Barton* proceedings, or the allegations still pending in *Vanquish v. United States*." Pl. MJAR at 25–26. While acknowledging the contracting officer was aware of the legal matters and received information about them during multiple rounds of corrective action, TLC argues the information sought via signed statements and reaffirmations from Vanquish focused solely on the issue of whether disclosure of the legal matters was required under FAR 52.209-7(c)(1). Pl. Reply at 13–14. This information, TLC contends, provided the contracting officer with no information on the cases' substance to consider when making a responsibility determination. *Id.* To bolster its point, at oral argument, TLC highlighted that the contracting officer allegedly never received copies of the settlement agreements in *Sadat* and *Koshani*. Oral Arg. Tr. at 14:15–20. TLC therefore argues the contracting officer arbitrarily and capriciously did not sufficiently consider necessary evidence when assessing whether Vanquish was a responsible party. Pl. MJAR at 25–26.

In reviewing a contracting officer's responsibility determination, this Court cannot substitute its own judgment for that of the contracting officer. *See Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350, 1359 (Fed. Cir. 2015); *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999) ("Because responsibility decisions are largely a matter of judgment, contracting officers are generally given wide discretion to make this decision."). Contracting officers are provided "wide discretion," both "in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination." *Impresa*, 238 F.3d at 1334–35 (internal quotations omitted) (citing *John C. Grimberg Co*., 185 F.3d at 1303). Further, the contracting officer is "the arbiter of what, and how much, information he needs," and is not obligated "to seek additional or clarifying responsibility information from a contractor." *John C. Grimberg Co.,* 185 F.3d at 1303.

Notably, TLC does not dispute the contracting officer was aware of Vanquish's legal matters.  Pl. Reply at 13–15.  As reflected in the Administrative Record, the contracting officer received new information, and reaffirmations of facts from Vanquish and Barton, concerning the *Sadat*, *Koshani*, *Barton* and *Vanquish Worldwide* matters during multiple corrective actions.  *See* Tab 98 at AR 15733; Tab 32 at 5529–33; Tab 91 at AR 14185–86; Tab 96a at AR 14694.  In announcing corrective action in response to TLC's first GAO protest, the contracting officer made explicit that he would "[i]nvestigate the allegations and information provided in the protest related to Vanquish's responsibility," "[d]etermine their impact on the award decision," and then "[m]ake a new responsibility determination and award decision."  Tab 90 at AR 14184.  The January 20, 2022 Determination of Contractor Responsibility or Non-Responsibility stated it "[took] into account" both previously provided information and information obtained since the prior responsibility determination.  Tab 94 at AR 14202.  This Court has reviewed the information received by the contracting officer, as TLC urged it to do, and finds the contracting officer's responsibility determination was not arbitrary and capricious or contrary to law.  Oral Arg. Tr. at 62:17–20.

While the Court agrees with TLC's characterization that the contracting officer's information requests to Vanquish primarily concerned matters of disclosure, this does not necessarily mean, and, indeed, the Administrative Record does not reflect, that the contracting officer cabined his knowledge about the referenced lawsuits to just the disclosure issue.  To this end, the Court remains mindful of the "wide discretion" afforded contracting officers when making responsibility determinations.  *Impresa*, 238 F.3d at 1334–35.  A key, and somewhat unique, aspect of that discretion is that contracting officers are not required to provide a written explanation stating the basis for a determination of responsibility; per FAR 9.105-2(a)(1), the contracting officer's signing of a contract alone constitutes a determination of responsibility.  *Id.* at 1337–38;

FAR 9.105-2(a)(1) ("The contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract.").[6]  Indeed, as noted by the Federal Circuit, "where the contracting officer makes a determination of responsibility, as opposed to the situation in which he makes a determination of non-responsibility, the regulations do not require the contracting officer to 'make, sign, and place in the contract file a determination of' responsibility which states the basis for the determination."  *Impresa*, 238 F.3d at 1337–38 (quoting 48 C.F. R. § 9.105-2(a)).  The FAR does, however, require that "[d]ocuments and reports supporting a determination of responsibility or nonresponsibility . . . must be included in the contract file."  FAR 9.105-2(b)(1).

The robust Administrative Record here reflects that the contracting officer received further information regarding the *Sadat*, *Koshani*, *Barton* and *Vanquish Worldwide* matters,  reasonably considered such information in making a responsibility determination, and maintained those records in the contract file, thereby satisfying FAR 9.105-2(b)(1).  *See, e.g.*, Tab 90 at AR 14184; Tab 94 at AR 14202; Tab 32 at AR 5529; Tab 92 at AR 14189.  In view of the extensive information provided to the contracting officer about the *Sadat*, *Koshani*, and *Barton* matters, including sworn declarations, all of which is reflected in the contracting officer's file and the Administrative Record, this Court declines to second-guess the contracting officer's decision as to what information was necessary or considered to make Vanquish's responsibility determination. *See, e.g.*, *id.*; Tab 91; Tab 92; Tab 96a at AR 14577; Tab 96a at AR 14694; Tab 99a at AR

---

[6] While courts have "power to require an explanation" from the contracting officer to explain the basis of a responsibility determination and aid in "meaningful judicial review," that power is discretionary.  *Impresa*, 238 F.3d at 1338.  This action includes an Administrative Record of over 17,000 pages containing multiple Source Selection Decision Documents and documents related to several rounds of protests and corrective actions that provide sufficient information for this Court's review.  This Court, therefore, finds no reason to demand further explanation for the contracting officer's determination that Vanquish qualified as a responsible offeror.

15763.99; Tab 99a at AR 15763.135.  Nor, under the present circumstances, where there was robust disclosure and a fulsome record, will the Court cast doubt on whether the contracting officer actually considered the information he stated he would so consider at the outset of a corrective action.  *See* Tab 90 at AR 14184; *John C. Grimberg Co., Inc.*, 185 F.3d at 1303.  While further discussion of the underlying facts in the prior legal matters may have been clarifying to the contracting officer's responsibility decision, the absence of such discussion is insufficient to overcome the wide deference afforded to contracting officers, related to their ability both to determine the type and amount of information necessary and to make responsibility determinations without extensive explication of their reasoning.  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998) ("An explicit explanation [of an agency's reasoning] is not necessary . . . where the agency's decisional path is reasonably discernible."); *Impresa*, 238 F.3d at 1337–38 ("[W]here the contracting officer makes a determination of responsibility, as opposed to the situation in which he makes a determination of non-responsibility, the regulations do not require the contracting officer to 'make, sign, and place in the contract file a determination of' responsibility which states the basis for the determination.") (quoting 48 C.F.R. § 9.105-2(a)).  The Court thus finds the information included in the Administrative Record, including Vanquish's declarations, along with the written statements of the contracting officer in this case, sufficient to demonstrate a rational basis for the contracting officer's responsibility determination of Vanquish.

Finally, TLC's counsel suggested at oral argument that any determination that Vanquish was "responsible," regardless of what information the contracting officer requested or considered, should automatically be considered arbitrary and capricious given the substance of Vanquish's legal matters.  *See* Oral Arg. Tr. at 64:11–15 (reflecting TLC's position "that there is no circumstance[] under which Vanquish can be considered responsible").  This argument works backwards – it requests the Court supplant the contracting officer's responsibility determination

due solely to a disagreement with the outcome, rather than as the result of this Court's review to address behavior that was allegedly arbitrary, capricious, or contrary to law. *See Colonial Press Int'l*, 788 F.3d at 1359 ("We will not substitute our own judgment for that of the agency in this matter.") (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) ("[The APA does not allow *de novo* review] in the sense that the court may put itself into the agency's position in deciding to whom the award should be made. Although the inquiry is to be searching, it does not permit the court to substitute its judgment for that of the agency.") (citing *Citizens to Pres. Overton Park*, 401 U.S. at 416–20). This Court cannot substitute the contracting officer's determination merely based on the existence of, or allegations within, such past lawsuits, no matter how salacious. *See, e.g.*, Judgment, *Koshani v. Barton*, No. 17-cv-265, Tab 87a at AR 13965; *Sadat ICC Partial Award on Liability*, AR 14579–630; Tab 91; Tab 92; Tab. 99a at AR 15763.111; Tab 96a at AR 14707–22; *Colonial Press Int'l*, 788 F.3d at 1359. Such an action would unreasonably undermine the contracting officer's discretion in making a responsibility determination, without a basis to do so. Accordingly, the Court declines to adopt TLC's argument.

For these reasons, this Court finds unpersuasive TLC's claim that Vanquish's responsibility determination lacked a rational basis. Accordingly, the Court denies TLC's MJAR on this ground as well.

## CONCLUSION

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 38), **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record (ECF No. 41), and **GRANTS** Intervenor-Defendant's Cross-Motion for Judgment on the Administrative Record (ECF No. 40). The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

The parties are directed to **CONFER** and **FILE** a Notice within seven days of this Memorandum and Order, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

Dated: December 5, 2022
       Washington, D.C.